In the Matter of the Estate of Violet Bidwill Wolfner, Deceased.
Walter H. S. Wolfner, Appellant, v. Charles W. Bidwill, Jr., Individually and as Executor of the Last Will and Testament of Violet Bidwill Wolfner, Deceased, and William V. Bidwill, Appellees.

Gen. No. 48,893.

First District, Second Division.
October 15, 1963.

Sears, Streit & Dreyer, of Chicago (Barnabas F. Sears, John E. Dreyer and James N. Kosmond, of counsel), for appellant.

Thomas D. Nash, Jr. and Robert M. Ahern, of Chicago, for appellees.

MR. JUSTICE FRIEND delivered the opinion of the court:

During their early married life, Charles W. Bidwill and his wife Violet adopted two sons, Charles W. Bidwill, Jr., in 1928, and William V. Bidwill in 1933. Charles W. Bidwill, Sr., died on April 19, 1947, and subsequently, on September 28, 1949, his widow married Walter H. S. Wolfner. She died on January 29, 1962, and by her last will and testament left the bulk of her estate to her two adopted sons. After the will was filed for probate in Cook County on February 6, 1962, Charles W. Bidwill, Jr., made proof of heirship, and testified that decedent was married twice, that of the first marriage two children were born, namely, the witness Charles W. Bidwill, Jr., and William V. Bidwill, both of whom, at the time of testimony, were of age and married, and that no children were born of the Wolfner marriage nor were any adopted. When Charles Bidwill, Jr., made proof of heirship, neither he nor his brother William knew that they had been adopted in infancy; this fact became known to them only shortly prior to the time Wolfner filed his petition attacking the adoption decrees. On February 26, 1962 the court entered an order adjudging that decedent left surviving Walter H. S. Wolfner, her husband, and Charles W. Bidwill, Jr., and William V. Bidwill, her sons, as her only heirs at law.

79

■■■■■■■■■■■■■■■■■

On March 28, 1962 Wolfner came into the Probate Court by petition to vacate the order declaring heirship, at the same time asking for the appointment of an administrator to collect. He averred in his petition that Charles and William Bidwill were not natural born children of decedent, and that the proceedings relating to their adoption were void because the County Court where the proceedings were had lacked jurisdiction of the subject matter. On April 24, 1962 the Probate Court found that the County Court of Cook County had jurisdiction over the subject matter in each of the adoption proceedings relating to Charles and William Bidwill, directed that the February 1962 order declaring heirship be amended to show that Charles and William Bidwill were the adopted, rather than the natural, sons of decedent, and denied Wolfner's petition to have those adoption proceedings declared void. On May 1, 1962, in accordance with the prayer of the petition filed by Charles Bidwill, Jr., the court ordered that Earl Fults, brother of the decedent, be permitted to testify as a witness in the proceeding to amend and supplement the February 1962 order declaring heirship; at the hearing it was stipulated that the evidence admitted at the hearings which culminated in the order of April 24, 1962 would be admitted and considered as part of the evidence in the supplemental proof of heirship. On May 2, 1962 the court entered its order finding that decedent died leaving Walter Wolfner, her husband, Charles W. Bidwill, Jr., her adopted son, and William V. Bidwill, her adopted son, as her only heirs at law.

■■■ Wolfner prosecutes this appeal from the orders entered April 24, May 1, and May 2, 1962. His attempt to set aside the adoption decrees is a collateral attack on his part against decrees entered approximately thirty years ago. He seeks to become the principal heir to the estate of the deceased, to the

80

exclusion of her two adopted sons. The inquiry in the Probate Court was limited to the sole question whether the County Court, where the adoption proceedings were fully heard and the decrees entered, had jurisdiction of the subject matter.

██ The rule is well established in Illinois that an adoption decree rendered by a court having jurisdiction of adoption proceedings is not subject to collateral attack where the record shows substantial compliance with the essential provisions of the Adoption Act. 2 Am Jur2d Adoption § 68 (1962); Ashlock v. Ashlock, 360 Ill 115, 195 NE 657 (1935); McConnell v. McConnell, 345 Ill 70, 177 NE 692 (1931). In Carter Oil Co. v. Norman, 131 F2d 451, 455 (1942), the court said:

> "An adoption proceeding, it is true, is statutory, and jurisdiction of the subject matter and of the person is each a prerequisite to the validity of a decree of adoption, Hook v. Wright, 329 Ill 299, 160 NE 579, and the record of the proceeding must show a substantial compliance with the statute to give the court jurisdiction in exercising the statutory powers conferred, yet, in the consideration of defendant's contention, it is well to remember that since the right of adoption is not only beneficial to those immediately concerned but likewise to the public, construction of the statute should not be narrow or technical nor compliance therewith examined with a judicial microscope in order that every slight defect may be magnified,—rather, the construction ought to be fair and reasonable, so as not to defeat the act or the beneficial results where all material provisions of the statute have been complied with. McConnell v. McConnell, 345 Ill 70, 177 NE 692. Much more does this principle apply where the parties to the adoption proceedings are not ob-

jecting, the inquiry in such case being narrowed to the jurisdiction of the subject matter. Ashlock v. Ashlock, 360 Ill 115, 195 NE 657."

The doctrine there enunciated has been declared to be the public policy of Illinois by the present adoption statute. The relevant provisions of section 20 (Ill Rev Stats 1961, c 4, § 9.1–20, as amended in 1959) state:

"This Act shall be liberally construed, and the rule that statutes in derogation of the common law must be strictly construed shall not apply to this Act.

"All defects in pleadings, either in form or substance, not objected to prior to the entry of final decree, shall be deemed to be waived."

■■■■■ Specifically Wolfner challenges the petition in the Charles Bidwill, Jr., adoption solely on the ground that it did not state a statutory cause for adoption in that it failed to allege that the natural mother had consented to the adoption of her child. Consent was one of the statutory requirements for adoption under the 1927 statute (Ill Rev Stats 1927, c 4, § 2). However, Wolfner ignores the fact that the mother did consent to the adoption, that her consent was filed of record in the proceedings, and that the County Court found in its decree that she had consented to the adoption of her minor child by petitioners Charles and Violet Bidwill. Wolfner contends that the petition for adoption did not set forth the consent; but this contention is effectually answered by numerous court decisions holding that even if a jurisdictional fact is not alleged in the petition, nevertheless there is substantial compliance if that fact appears elsewhere in the record of the proceedings. Gebhardt v. Warren, 399 Ill 196, 199, 77 NE2d 187 (1948); McConnell v. McConnell, 345 Ill 70, 75, 177 NE 692

(1931); and In the Matter of Bohn, 308 Ill 214, 222, 139 NE 64 (1923). Moreover, it was held in the Gebhardt case (pp 199, 203), as the established rule in this state, that the consent is properly considered a part of the petition.

Wolfner's collateral attack upon the written consents given by each of the natural mothers in the respective adoption proceedings of Charles and William Bidwill obviously challenges the jurisdiction of the County Court over the persons of the mothers. In the Gebhardt case the court held (p 202):

> "In connection with this point, appellants advance arguments, based on the appearance and the consent, that the court did not have jurisdiction of the person of the mother. As we previously stated, since the parties to the adoption proceeding are not objecting, our inquiry is limited to the question whether the trial court had jurisdiction of the subject matter. . . ."

Petitioner argues that the consents appearing of record are invalid for the following reasons:

1. they were executed in blank on printed forms;

2. the blank spaces on the forms were filled in either in handwriting or by typewriting after the consents were signed;

3. the typewriters used to fill in the blanks were the same typewriters used to prepare the respective adoption petitions and decrees; and

4. the alterations in longhand on the consent in the William Bidwill case were made by the same person who made the longhand alterations in the petition and decree.

These charges are unsupported by any proof offered or adduced by Wolfner. They represent merely the

conclusions of what he thinks might have occurred thirty years ago. No handwriting expert was called to establish that the same party made the alterations and filled in the blank spaces, nor did any witness testify that the typewriters used to fill in the consents were the same as those used to prepare the petitions and decrees. There is nothing of record to sustain the conclusion that the mothers signed the consent forms in blank or that the spaces were subsequently filled in. If any presumptions are to be indulged, it is more reasonable to assume that the mothers signed the consents, not in blank, but after they were in all respects completed. The County Court had the opportunity at the time to examine these consents and to determine if any fraud had been perpetrated on the mothers.

Petitioner's contentions relative to the consents involve questions of fact which cannot be inquired into in a collateral proceeding. In re Estate of Harris, 339 Ill App 162, 166, 89 NE2d 197 (1949), held:

> "There is nothing in the record whatever to indicate that the defendant did not consent to the adoption, and nothing to indicate that the court did not fully inquire into the wishes of the defendant, or that the court was not guided by her wishes in the entry of the adoption decree. Whether the defendant consented to the adoption was a question of fact. As stated in Kennedy v. Borah, 226 Ill 243, at page 253, 'Whether the facts proved justified the decree (of adoption) cannot be inquired into in this collateral proceeding.' . . . ."

As an additional ground for challenging the validity of these consents it is urged that they were revocable. However, the records do not disclose that

84

either mother ever made any attempt to revoke her consent. On all the evidence before it, the County Court found that the mothers had consented to the adoption, and these decrees cannot be challenged thirty years later for any of the reasons urged by Wolfner.

██ The record in each of the adoption proceedings shows that an appearance and a consent were filed on a regular form by the respective natural mothers, in which each entered her appearance, waived issuance and service of process, and consented to the immediate hearing of the cause and to the adoption of her child. The procedure of having the natural mother sign a document of this kind has been and is presently a routine practice in this state; and it is common knowledge that the consent of a mother to the adoption of her child is usually obtained prior to the institution of adoption proceedings. Wolfner contends that the disparity in the dates between the mothers' consents and the filing of the petitions for adoption renders the consents inoperative. A similar question was presented in the Gebhardt case where the consent of the natural mother was dated December 31, 1921, while the petition for adoption was not filed until May 27, 1922. Moreover, the appearance filed by the mother was undated. The court there held that the consent and appearance were valid to support the decree of adoption.

Respondents raise the additional point, supported by authority, that the heir of an adoptive parent is estopped from denying the validity of the adoption decree, but in the view we take of this case it is unnecessary to discuss this principle.

██ Here the adoption of two children occurred in 1928 and 1933 respectively by a husband and wife, both of whom are now deceased. Some thirty years

85

later, after the two adopted children had been reared by the adoptive parents and had been treated as their natural children, the second husband of the adoptive mother seeks to invalidate the decrees of adoption. After a careful examination of the record we are convinced that substantial compliance with the terms of the adoption statute was had, and that the reasons urged by Wolfner for holding these adoptions invalid cannot, under the authorities and the facts of this case, be sustained. The Probate Court in its orders properly found that the decrees and adoptions in each instance were valid, and accordingly its orders are affirmed.

Orders affirmed.

BURKE, PJ and BRYANT, J, concur.